David D. Lin (DL-3666)
david@iLawco.com
Justin Mercer (JM-1954)
justin@iLawco.com
LEWIS & LIN, LLC
45 Main Street, Suite 608
Brooklyn, NY 11201
Tel: (718) 243-9323
Fax: (718) 243-9326

*Counsel for Plaintiff Alan Klement*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALAN KLEMENT,<br><br>                                    *Plaintiff*,<br><br>        v.<br><br>STRATEGYN, LLC, STRATEGYN, INC., ANTHONY ULWICK, MIKE BOYSEN, and JOHN DOES 1-9,<br><br>                                    *Defendants*. | Case No: 1:18-cv-8387<br><br><br><u>**COMPLAINT**</u> |

Plaintiff ALAN KLEMENT ("Mr. Klement" or "Plaintiff"), by and through his undersigned counsel, for its complaint for damages and injunctive relief against defendants, STRATEGYN, LLC ("Strategyn LLC"), STRATEGYN, INC. ("Strategyn Inc."), ANTHONY ULWICK ("Ulwick"), MIKE BOYSEN ("Boysen"), and JOHN DOES 1-9 (together with Strategyn LLC, Strategyn Inc., Ulwick, and Boysen, "Defendants"), alleges as follows:

### STATEMENT OF CASE

1.      Plaintiff is an author, entrepreneur and innovator in the field of Jobs-to-be-Done (JTBD)—a marketing and business development theory.

2.      Plaintiff brings this action pursuant to the federal Lanham Act and common law for unfair competition, trade disparagement, tortious interference with

contract, *prima facie* tort, harassment and for the malicious, willful and unlawful publication in this District of false, misleading, disparaging and defamatory statements regarding Plaintiff by and/or under the direction of Defendants, competitors in the JTBD market.

3.      Defendants John Does 1-9 are individuals or entities whose identities has not yet been determined.  Upon learning the specific identity of said defendants, Plaintiff shall move to substitute the named parties or otherwise amend the complaint.

4.      Upon information and belief, Defendants own, operate, control, are employees of and/or support a competing business known as "Strategyn."

5.      In late 2016, Plaintiff published a book called "When Coffee and Kale Compete" which promoted and detailed JTBD theory.

6.      Nearly immediately thereafter, Defendants commenced and orchestrated a massive, systematic pattern of online harassment and disparagement via websites such as Twitter, Medium, LinkedIn, and via their own website in an effort to usurp Plaintiff's current customers and dissuade Plaintiff's prospective customers from doing business with Plaintiff by falsely painting plaintiff as a "liar" and "conman," and someone who spawned in-fighting in the JTBD community by defaming others.  Defendants also created fake, impersonating, and/or "troll" Twitter and Medium accounts to attack Plaintiff and his business, hijacking Plaintiffs' own commercial advertising for his services to create negative ads that denigrate Plaintiff's services—while touting Defendants' own.

7.      Ironically, Defendants' statements falsely accused Plaintiff of spawning in-fighting and "troll" activities, when Defendants' own employees managed and/or directed the behavior on these very same abusive Twitter accounts. Defendants' false and disparaging statements remain active online and, upon information and belief, viewed by thousands of visitors each day, and Defendants continue to defame and injure Plaintiff with these false and misleading statements.

8.      Defendants' concerted efforts and false accusations threaten to destroy Plaintiffs' entire reputation and livelihood.   As a result of Defendants' misconduct, Plaintiff has been and continues to be substantially and irreparably harmed.

## PARTIES

9.      Plaintiff Alan Klement is a private individual domiciled and residing in the State of New York, County of New York.  Mr. Klement is not a public official and not a public figure.

10.      Upon information and belief, Defendant Strategyn LLC is a limited liability company organized under the laws of the State of Delaware with offices at 1808 Wedemeyer Street, Suite 110, San Francisco, California 94129 (the "Wedemeyer Office") and in Boynton Beach, Florida.  Upon information and belief, Strategyn LLC's is wholly-owned by Strategyn Holdings, LLC, a Delaware limited liability company. Upon information and belief, Strategyn Holdings, LLC's two members are (i) Defendant Strategyn, Inc. and (ii) SJKC, Inc., both Florida corporations with a principal place of business at the Wedemeyer Office. Upon information and belief, Strategyn LLC conducts substantial business in interstate commerce and within the State of New York, and does business under the tradename "Strategyn."

11.      Upon information and belief, Defendant Strategyn Inc. is a corporation organized under the laws of the State of Florida with a principal place of business at the Wedemeyer Office, and is duly authorized as a foreign corporation in the State of New York.   Upon information and belief, Strategyn Inc. is wholly-owned by Defendant Ulwick. Upon information and belief, Strategyn Inc. conducts substantial business in interstate commerce and within the State of New York, and also does business under the tradename "Strategyn."

12.      Upon information and belief, Defendant Anthony "Tony" Ulwick ("Ulwick") is an individual domiciled and residing in Sausalito, California. Upon information and belief, Defendant Ulwick is a manager and the CEO of Strategyn LLC,

3

and the sole owner and president of Strategyn Inc.  Upon information and belief, Ulwick either personally scripted the false postings concerning the New York-based Plaintiff on the various websites and either physically posted them himself, or instructed his employees and/or New York-based accomplice(s) to do so, under his sole authority and direction. Upon further information and belief, Ulwick conducts substantial business in interstate commerce and within the State of New York.

13.     Upon information and belief, Defendant Mike Boysen ("Boysen") is an individual domiciled and residing in Atlanta, Georgia. Upon information and belief, Defendant Boysen is an employee and "Director" of Strategyn LLC and/or Strategyn Inc. At all relevant times hereto, in his role as an employee and "Director" of Strategyn LLC and/or Strategyn Inc., Boysen either personally scripted the false postings concerning the New York-based Plaintiff on the various websites and either physically posted them himself, using various pseudonyms listed below or instructed other Strategyn employees and/or New York-based accomplice(s) to do so, under his authority and direction. Boysen uses the account "@mikeboysen" when participating on Twitter.com.  Upon further information and belief, Boysen conducts substantial business in interstate commerce and within the State of New York.

14.     Upon information and belief, Defendant John Doe 1 ("Doe 1") is an individual residing in the State of New York. The true name of Defendant sued herein as Doe 1 is unknown to Plaintiff, which sues said Defendant by such fictitious name. Doe 1 uses the pseudonyms "New Me" and "@dunningkrugeryo" when participating on Twitter.com.  If necessary, Plaintiff will seek leave of court to amend this Complaint to state Doe 1's true name when ascertained. Upon information and belief, Doe 1 should also be subject to the relief requested herein.  Upon further information and belief, Doe 1 was an employee and/or accomplice of Defendants Ulwick and Strategyn, and committed the acts herein under the instruction, authority and/or direction of Ulwick or Boysen. Alternatively, upon information and belief, Doe 1 is Boysen.

15.     Upon information and belief, Defendant John Doe 2 ("Doe 2") is an individual residing in the State of New York. The true name of Defendant sued herein as Doe 2 is unknown to Plaintiff, which sues said Defendant by such fictitious name. Doe 2 uses the pseudonyms "NewMe Alan Wow" and "@JTBDuning" when participating on Twitter.com.  If necessary, Plaintiff will seek leave of court to amend this Complaint to state Doe 2's true name when ascertained. Upon information and belief, Doe 2 should also be subject to the relief requested herein.  Upon further information and belief, Doe 2 was an employee and/or accomplice of Defendants Ulwick and Strategyn, and committed the acts herein under the instruction, authority and/or direction of Ulwick or Boysen. Alternatively, upon information and belief, Doe 2 is Boysen.

16.     Upon information and belief, Defendant John Doe 3 ("Doe 3") is an individual residing in the State of New York. The true name of Defendant sued herein as Doe 3 is unknown to Plaintiff, which sues said Defendant by such fictitious name. Doe 3 uses the pseudonyms "Alan Klementroll" and "@JTBDunKruger" when participating on Twitter.com.  If necessary, Plaintiff will seek leave of court to amend this Complaint to state Doe 3's true name when ascertained. Upon information and belief, Doe 3 should also be subject to the relief requested herein.  Upon further information and belief, Doe 3 was an employee and/or accomplice of Defendants Ulwick and Strategyn, and committed the acts herein under the instruction, authority and/or direction of Ulwick or Boysen. Alternatively, upon information and belief, Doe 3 is Boysen.

17.     Upon information and belief, Defendant John Doe 4 ("Doe 4") is an individual residing in the State of New York. The true name of Defendant sued herein as Doe 4 is unknown to Plaintiff, which sues said Defendant by such fictitious name. Doe 4 uses the pseudonyms "Alan Wow" and "@jtbdunning" when participating on Twitter.com.  If necessary, Plaintiff will seek leave of court to amend this Complaint to state Doe 4's true name when ascertained. Upon information and belief, Doe 4 should also be subject to the relief requested herein.  Upon further information and belief, Doe 4

was an employee and/or accomplice of Defendants Ulwick and Strategyn, and committed the acts herein under the instruction, authority and/or direction of Ulwick or Boysen. Alternatively, upon information and belief, Doe 4 is Boysen.

18.     Upon information and belief, Defendant John Doe 5 ("Doe 5") is an individual residing in the State of New York. The true name of Defendant sued herein as Doe 4 is unknown to Plaintiff, which sues said Defendant by such fictitious name. Doe 5 uses the pseudonyms "Melanie K" (in a reference to Plaintiff's wife's first name) and "@Jobs2BD" when participating on Twitter.com.  If necessary, Plaintiff will seek leave of court to amend this Complaint to state Doe 4's true name when ascertained. Upon information and belief, Doe 5 should also be subject to the relief requested herein.  Upon further information and belief, Doe 5 was an employee and/or accomplice of Defendants Ulwick and Strategyn, and committed the acts herein under the instruction, authority and/or direction of Ulwick or Boysen. Alternatively, upon information and belief, Doe 5 is Boysen.

19.     Upon information and belief, Defendant John Doe 6 ("Doe 6") is an individual residing in the State of New York. The true name of Defendant sued herein as Doe 6 is unknown to Plaintiff, which sues said Defendant by such fictitious name. Doe 6 uses the pseudonyms "Alan Klemental" and "@AlanKlemental" when participating on Twitter.com.  If necessary, Plaintiff will seek leave of court to amend this Complaint to state Doe 6's true name when ascertained. Upon information and belief, Doe 6 should also be subject to the relief requested herein.  Upon further information and belief, Doe 6 was an employee and/or accomplice of Defendants Ulwick and Strategyn, and committed the acts herein under the instruction, authority and/or direction of Ulwick or Boysen. Alternatively, upon information and belief, Doe 6 is Boysen.

20.     Upon information and belief, Defendant John Doe 7 ("Doe 7") is an individual residing outside of the State of New York. The true name of Defendant sued herein as Doe 7 is unknown to Plaintiff, which sues said Defendant by such fictitious

name. Doe 7 uses the pseudonyms "JTBD Police" and "@jtbdpoliceman" when participating on Twitter.com and Medium.com.  If necessary, Plaintiff will seek leave of court to amend this Complaint to state Doe 7's true name when ascertained. Upon information and belief, Doe 7 should also be subject to the relief requested herein.  Upon further information and belief, Doe 7 was an employee and/or accomplice of Defendants Ulwick and Strategyn, and committed the acts herein under the instruction, authority and/or direction of Ulwick or Boysen. Alternatively, upon information and belief, Doe 7 is Boysen.

21.    Upon information and belief, Defendant John Doe 8 ("Doe 8") is an individual residing outside of the State of New York. The true name of Defendant sued herein as Doe 8 is unknown to Plaintiff, which sues said Defendant by such fictitious name. Doe 8 uses the pseudonym "JTBD Information" when participating on blogs and forums, including Doe 8's on blog published on jobstobedoneinfo.wordpress.com.  If necessary, Plaintiff will seek leave of court to amend this Complaint to state Doe 8's true name when ascertained. Upon information and belief, Doe 8 should also be subject to the relief requested herein.  Upon further information and belief, Doe 8 was an employee and/or accomplice of Defendants Ulwick and Strategyn, and committed the acts herein under the instruction, authority and/or direction of Ulwick or Boysen. Alternatively, upon information and belief, Doe 8 is Boysen.

22.    Upon information and belief, Defendant John Doe 9 ("Doe 9") is an individual residing outside of the State of New York. The true name of Defendant sued herein as Doe 9 is unknown to Plaintiff, which sues said Defendant by such fictitious name. Doe 9 uses the pseudonyms "Dale Halvorson," "@dshlvrsn," "Leonardus Vendy Widhiatmojo," "D Halvorson," and/or "Alan Klewer" when participating on Twitter.com and Amazon.com.  If necessary, Plaintiff will seek leave of court to amend this Complaint to state Doe 8's true name when ascertained. Upon information and belief, Doe 8 should also be subject to the relief requested herein.  Upon further information and

belief, Doe 9 was an employee and/or accomplice of Defendants Ulwick and Strategyn, and committed the acts herein under the instruction, authority and/or direction of Ulwick or Boysen.

23.     The true names and capacities, whether individual, corporate, associate, or otherwise of Defendants sued herein as Does 1 through 9, are unknown to Plaintiff, which sues said Defendants by such fictitious names (the "Doe Defendants" – including Does 1 through 9). If necessary, Plaintiff will seek leave of court to amend this Complaint to state the Doe Defendants' true names when ascertained. Upon information and belief, the Doe Defendants should also be subject to the relief requested herein.

24.     At all times material to this action, each of Defendants was the agent, servant, employee, partner, alter ego, subsidiary, or joint venture of the other Defendant, and the acts of each Defendant were in the scope of such relationship; in doing the acts and failing to act as alleged in this Complaint, each of the Defendants acted with the knowledge, permission, and the consent of the other Defendant; and each Defendant aided and abetted the other Defendant in the acts of omissions alleged in this Complaint.

25.     Upon information and belief, Defendants acted in concert or individually in a covert scheme and/or conspiracy to harass, defame and unfairly complete with Plaintiff.  Defendant Ulwick is the sole owner of Strategyn.  Through Ulwick's operation and management of Strategyn, he maintained control, oversight and direction over the operation of Strategyn's online and social media postings.  At all times relevant hereto, Ulwick participated in, assisted in, supervised, guided, jointly authored and totally controlled Strategyn in its decision making, financing and other affairs.

## JURISDICTION AND VENUE

26.     This Court has jurisdiction over the subject matter of this action pursuant to the Lanham Act, 15 U.S.C. § 1051 et seq. and the laws of the State of New York.  This Court has subject matter jurisdiction, *inter alia*, pursuant to 28 U.S.C. §§ 1331, 1332, 1338, and 1367.

27.     This Court has pendent jurisdiction of the related state law claims asserted in this action pursuant to 28 U.S.C. § 1367 because they involve the same parties, they arise from the same operative facts common to the causes of action arising under the federal claims, and because the exercise of pendent jurisdiction serves the interests of judicial economy, convenience and fairness to the parties.

28.     Defendants further subjected themselves to this Court's jurisdiction by invoking the benefits and protections of this State in an attempt to cause harm within the State of New York.  Defendants orchestrated false and defamatory posts concerning Plaintiff's offering of goods and services, which referred to Plaintiff as a "liar" and "conman," and falsely accused Plaintiff of spawning abusive, troll accounts—which were in reality maintained by Defendants to complete with Plaintiff in New York. Their false and defamatory statements, made to third parties via websites such as Twitter, LinkedIn, Medium, Google+, and YouTube, imputing false facts that injure Plaintiff's business in New York. Defendants also created fake accounts and counterfeit books that impersonated Plaintiff and included Plaintiff's name and/or slavish representations of his name. Upon information and belief, Defendants did this so that the third parties would see Defendants' false and defamatory statements and counterfeit books and connect them with Plaintiff, thus causing Plaintiff harm with its customers in New York and elsewhere. Thus, personal jurisdiction over Defendants is also proper in New York pursuant to New York Civil Practice Law and Rules § 302(a).

29.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b) and (c), since some, or all, of the conduct that is the subject of this action occurred in this district.

## FACTUAL ALLEGATIONS

### A.  Plaintiff's Respected Businesses and Jobs-to-be-Done

30.     Plaintiff Alan Klement is an entrepreneur and innovator in the field of Jobs-to-be-Done (JTBD)—a marketing and development theory which enables businesses to discover new growth opportunities in products/services by focusing on the

reasons why consumers purchase products. A Job to be Done (JTBD) is the process a consumer goes through whenever she aims to transform her existing life-situation into a preferred one, but cannot because there are constraints that stop her.

31.     Through his consulting work and speaking engagements on JTBD theory, Mr. Klement helps teams and individuals become great at making and selling products that people will buy.  Mr. Klement has successfully applied JTBD theory to his own and others' businesses, and, as a result, has gained a positive reputation in the field of JTBD theory.

32.     Mr. Klement is the also author of the literary work entitled "When Coffee and Kale Compete: Become great at making products people will buy," and owns and/or controls the copyrights, exclusive rights under copyright, and/or related common law and statutory rights in the book (the "Work").

33.     Mr. Klement published the Work online, first in October of 2016, and later on Amazon.com in March of 2018. Similarly, the Work is also distributed by Amazon via Amazon Digital Services LLC in Kindle proprietary e-book file format.

34.     Mr. Klement also has active Twitter and Medium accounts and profiles accessible on the Internet at https://twitter.com/alanklement and https://jtbd.info.

35.     Mr. Klement's social media profiles are designed to help consumers gather information about himself, his businesses, his services and JTBD theory.  As such, his Twitter and Medium accounts are akin to advertising of services for a business.

**B.  Defendants' Competing Business and Wrongful Online Conduct**

36.     "Strategyn" is a competing JTBD consulting business operating in California and Florida, and is controlled and dominated by Defendant Ulwick.

37.     Upon information and belief, Defendants Strategyn LLC and Strategyn Inc. do business and provide consulting services in competition with Plaintiff in this District under the single tradename "Strategyn."

38.     Upon information and belief, "Strategyn" and Ulwick claim to be innovators in providing competing JTBD services known as "Outcome-Driven Innovation" or "ODI."

39.     Beginning in or around 2016 (contemporaneous with the publication of Mr. Klement's Work) and continuing to the present, in an intentional effort to divert business away from Plaintiff and toward Defendants, and to cause injury to Plaintiff, Defendants (competitors) manipulated and hijacked Plaintiff's Twitter and Medium profiles by spewing negative falsities for their own personal gain and to the detriment of Plaintiff.  For instance, Defendants would consistent "reply" or "quote" Plaintiff's tweets in their negative campaign.

40.     In particular, Defendants have posted taunting material and defamatory statements, authored by Defendant Ulwick and/or his employees, Mike Boysen and/or the Doe Defendants, about Plaintiff and Plaintiff's services on various forums, blogs and websites across the Internet.

41.     Defendants harassing and defamatory posts purported to convey factual information about Plaintiff and its services, but instead asserted outright falsehoods.

42.     Among other claims, Defendants' various online statements accuse Plaintiff of trying to "hijack" JTBD theory, of lying about Plaintiff's past businesses and business success, of being the cause of harassment and these fake, taunting social media accounts in the JTBD community, and calls Plaintiff a "lair," "scamme[r]," and "conman."

43.     In support of their attacks, Defendants use Twitter hashtags such as #JTBD and/or #jobstobedone (which are popular in the JTBD community to promote JTBD theory on these social platforms) to draw attention to their negative campaign against Plaintiff.

44.     Upon information and belief, Defendants embarked on this campaign of unfair competition and harassment because Ulwick was frustrated that Plaintiff's Work

11

did not attribute JTBD theory to Ulwick, include Ulwick as a part of JTBD history, and/or identify or pay homage to Ulwick as an influencer in the JTBD space—where Ulwick and Strategyn promote their "ODI" products/services.

45.     Ulwick and Boysen, under their control and authority, then created (or orchestrated the creation of) several fake, taunting Twitter profiles—i.e. those maintained by the Doe Defendants—to publicly attack Plaintiff.

46.     On or about May 27, 2017, Doe 1 created and authored the following Internet-based, defamatory negative ad denigrating Plaintiff (the "Doe 1 Negative Ad"):



47.     In addition to including Plaintiff's Twitter account, Doe 1's Twitter profile includes an image of Plaintiff.   Moreover, Doe 1's Twitter account name "dunningkrugeryo" is a reference to the Dunning-Kruger effect a cognitive bias whereby people who are incompetent at something are unable to recognize their own incompetence.

48.     The Doe 1 Negative Ad is false and misleading.

49.    On or about October 31, 2017, Doe 2 created and authored the following Internet-based, defamatory negative ads denigrating Plaintiff (the "Doe 2 Negative Ad"):



50.    As with Doe 1, Doe 2's Twitter profile includes an image of Plaintiff and Doe 2's Twitter account name "JTBDuning" is a reference to JTBD and the Dunning-Kruger effect—i.e. in an effort to call Plaintiff incompetent.

51.    The Doe 2 Negative Ad is false and misleading.

52.    As a result, a colleague of Plaintiff reported Doe 2's account to Twitter for, *inter alia*, harassment and abusive behavior towards Plaintiff.   On or between December 2017 and January 2018, Twitter conducted an investigation and found Doe 2's account in violation of the Twitter Rules on abusive behavior.

53.    Between November 9, 2017 and January 16, 2018, Doe 3 created and authored more that 75 Twitter messages attacking and denigrating Plaintiff.   As with Does 1, 2 and 9, Doe 3's Twitter account name "JTBDunKruger" is a reference to JTBD and the Dunning-Kruger effect—i.e. in an effort to call Plaintiff incompetent.

54.     For instance, on or about October 11, 2017, Doe 3 created and authored the following Internet-based, defamatory negative ad denigrating Plaintiff ("Doe 3's First Negative Ad"):

> Alan Klementroll
> **@JTBDunKruger**
>
> Blocked already?? That was fast! The conman doesn't like his game being exposed! Maybe if he'd actually read the books he pretends to cite, he wouldn't make a fool out of himself in the first place 😜; he might even learn something! #Wow #NoMcWow #JTBD #JobsToBeDone #JobsTheory

55.     On or about December 15, 2017, Doe 3 created and authored the following Internet-based, defamatory negative ad denigrating Plaintiff in reply to Defendant Boysen's tweet ("Doe 3's Second Negative Ad," and together with Doe 3's First Negative Ad, the "Doe 3 Negative Ads"):

> Alan Klementroll
> **@JTBDunKruger**
>
> **@mikeboysen** #JobsToBeDone is the process I'm going through to transform myself from a proven liar and fake guru who disagrees with literally every tenet of #JobsTheory &amp; can't close business to a guy who can jump back on the #JTBD bandwagon and have a job again. #MakeAlanMoney #Conman #Agile

56.     Between August 2017 and March 2018, Doe 4 created and authored more that hundreds of Twitter messages and Medium posts attacking and denigrating Plaintiff. As with Does 1 and 3, Doe 4's Twitter account name "Alan Wow - @jtbdunning" is a reference to Plaintiff, JTBD and the Dunning-Kruger effect—i.e. in an effort to call Plaintiff incompetent.  Doe 4's posts often include harassing images of Plaintiff in Doe 4's "critiques."

57.    For example, on or about September 9, 2017, Doe 4 created and authored the following Internet-based, defamatory negative ad denigrating Plaintiff (the "Doe 4's First Negative Ad"):

> Alan Wow
> @jtbdunning
> 9 Sep 2017
>
> What is wrong with @alanklement? Pathological liar or just an idiot? Taking votes!

58.    On November 9, 2017, Doe 4 created and authored the following Internet-based, defamatory negative ads denigrating Plaintiff (the "Doe 4's Second Negative Ad"):



59.    The Doe 4 Negative Ads are false and misleading.

60.    Between May 2017 and the present, Doe 5 created and authored more than 280 Twitter messages attacking and denigrating Plaintiff.    However, Doe 5 attacks became ugly and personal. For instance, Doe 5's Twitter account name "Melanie K -

@Jobs2BD" is a reference to Plaintiff's wife's first name (Melanie) and JTBD—i.e. in an effort to personally harass, taunt and antagonize Plaintiff.

61.     For example on or about November 8, 2017, Doe 5 authored the following tweet:



62.     Further, Doe 5's Twitter account includes as many positive references to Ulwick and Strategyn's work and services.  In fact, on a whole, Doe 5's Twitter account always bashes Plaintiff and promotes Defendants' Strategyn brand.  Indeed, Doe 5's Twitter account also promotes the content of Strategyn's employee's Mike Boysen by routinely and systematically liking and retweeting his content.

63.     On or about November 13, 2017, Doe 5 created and authored the following Internet-based, defamatory negative ad denigrating Plaintiff (the "Doe 5's First Negative Ad"):

> Two of the biggest lying, cheating and stealing charlatans on the Internet
>
> @jacobm meet @alanklement [Plainitff]
>
> God help the world if the two of you are the future.

64.     Defendant Boysen retweeted Doe 5's First Negative Ad.

65.     On or about March 2, 2018, Doe 5 created and authored the following Internet-based, defamatory negative ad denigrating Plaintiff (the "Doe 5's Second Negative Ad"):

> #JTBD is not a method. Interviewing buyers leads not to #innovation. You're being scammed

66.     Between November 1, 2017 and January 2018 (in little more than one month), Doe 6 created and authored more that 220 Twitter messages attacking and denigrating Plaintiff.  For instance, Doe 6's Twitter account name "Alan Klemental" is a reference to Plaintiff's name—i.e. in an effort to impersonate, personally harass, taunt and antagonize Plaintiff.

67.     For example, on or about November 17, 2017, Doe 6 created and authored the following Internet-based, defamatory negative ad denigrating Plaintiff, in reply to an advertisement regarding Plaintiff's presentation in Colombia (the "Doe 6 Negative Ad"):



68.     The Doe 6 Negative Ad is false and misleading.

69.     Between early January 2018 and around May 2018, Doe 7 created and authored more that 100 Twitter messages and Medium posts attacking and denigrating Plaintiff, while promoting Ulwick and Strategyn's ODI (the "Doe 7 Negative Ads").

70.     The Doe 7 Negative Ads are false and misleading.

71.     Doe 8 uses the pseudonym "JTBD Information" when participating on blogs and forums, including Doe 8's on blog published on jobstobedoneinfo.wordpress.com (the "Doe 8 Negative Blog").  On or about December 19, 2017, Doe 8 published the Negative Blog, attacking and denigrating Plaintiff, while promoting Ulwick ("Alan . . .  also to cut out Ulwick as a pioneer." and "Ulwick has been practicing what he preaches for 26 years, with incredible success. The only one delusionally [*sic*] pretending this isn't true is Alan.")

72.     The Doe 8 Negative Blog is false and misleading.

73.     Between early May 2017 to the present, Doe 9 created and authored more that 100 Twitter messages and 10 Medium posts attacking and denigrating Plaintiff, targeting organizers and/or attendees of conferences where Plaintiff was scheduled to speak, while promoting Ulwick and Strategyn's ODI.

74.     For example, in early February 2018, Plaintiff was scheduled to speak and present a workshop at the User Experience: Lisbon ("UX:Lx") conference on May 22-25, 2018 in Lisbon Portugal.  In support of Plaintiff's keynote and workshop, conference organizers sent a tweet from their official Twitter account (@uxlx).

75.     Then, on February 2, 2018, Doe 9 replied to the UX:Lx advertisement, denigrating Plaintiff, as follows (the "Doe 9 First Negative Ad):



76.     On or about February 26, 2018, Doe 9 created and authored the following Internet-based, defamatory negative ad denigrating Plaintiff (the "Doe 9 Second Negative Ad," together with the Doe 9 First Negative Ad, Doe 1-8 Negative Ads, the "Doe Negative Ad Campaign"):

> @dshlversn
>
> Replying to @uxqonita **@mikeboysen**
>
> The basic problem is that Alan is an intellectually dishonest bad actor. Most of the tangled mess is the direct result of his own conflations including claiming to have, himself, taught Clay about jobs.

77.     Immediately after Doe 9's First Negative Ad, which falsely accuses Plaintiff of "hoodwink[ing]" and deceit, organizers cancelled Plaintiff's workshop and keynote at UX:Lx.

78.     Each of those statements made in the Doe Negative Ad Campaign are false and defamatory. The statements in the Doe Negative Ad Campaign are false and fabricated for at least two reasons: (1) Defendants give the false impression that they are

unbiased critics of Plaintiff, and (2) they falsely accuse Plaintiff of incompetence and being a "liar," "cheat[er]," "scamme[r]," and a "conman."

79.    Defendants knew, or should have known, that the statements were false when made.  The above statements are knowingly and materially false, and were made to defame Plaintiff and divert Plaintiff's customers to Defendants.

80.    On or about January 16, 2018, Defendant Ulwick wrote a Medium post blaming Plaintiff for the community infighting, for rendering the #JTBD Twitter hashtag useless, and for spawning the trolling Doe accounts set forth above (the "Ulwick Medium Post").

81.    Specifically, in the Medium Post, Ulwick claimed:

> Because [Klement] blocks people from commenting on his disparaging posts, a number of anti-Klement Twitter accounts have appeared, bringing the Jobs-to-be-Done community unwhelming and overwhelming drama, and ruining the #JTBD hashtag by discouraging people to engage in healthy conversation.

> What anti-Klement investigators did reveal, however, is that Klement's intellectual dishonestly is not isolated to this case. It turns out that Klement heavily misrepresented his work history on LinkenIn and that his claim of being an innovation guru who used his own "evolved version" of JTBD theory to become a rich entrepreneur who sold two successful companies is completely bogus.

82.    Given the similarities between the Doe Defendants' attacks on Plaintiff and Defendant Boysen's public "critiques" of Plaintiff (which all similarly accuse Plaintiff of "lying" about his past, experience and clients), while the Doe Defendants' praise and promote Boysen's employer (Strategyn) and boss (Ulwick), upon information and belief, Boysen either personally scripted the Doe Negative Ad Campaign on the various websites and either physically posted them himself, using various pseudonyms listed above or instructed other Strategyn employees and/or accomplice(s) to do so, under his authority and direction.

83.     To corroborate what was, at the time, a suspicion at to Boysen's conduct, a colleague of Plaintiff reported Boysen's account to Twitter for, *inter alia*, harassment and abusive behavior towards Plaintiff.  On or between December 2017 and January 2018, Twitter conducted an investigation and found Boysen's account in violation of the Twitter Rules on abusive behavior.



84.     Then, on or about January 2018, Twitter conducted a supplemental investigation into Boysen based on allegations of his use of the Doe Defendants' Twitter accounts to, *inter alia*, denigrate Plaintiff. Twitter found that Boysen's account was "violating [Twitter's] rules against managing multiple Twitter accounts for abusive purposes:



85.   Furthermore, Ulwick's statements blaming Plaintiff for rendering the #JTBD Twitter hashtag useless and spawning troll accounts is deceptive and misleading, insofar as these taunting Doe accounts are managed by, maintained by and/or authored under the direction of Strategyn's own employee(s), to wit: Defendant Boysen.

86.   Ironically, Ulwick himself has authored, created and tweeted various anti-Plaintiff hashtags, such as #klementfallacy, #klementsfallacy, #KlementTheTroll, #BBA ("blocked by Alan") and "BBAK ("blocked by Alan Klement"), to perpetrate his coordinated attack campaign:



87.    These hashtags then curiously reappear and/or are retweeted by in the content of the Doe Negative Ad Campaign, as well as in tweets by Defendant Mike Boysen which promote Ulwick and Strategyn's competing ODI ("Outcome-driven Innovation") platform:



88.    In other words, Defendants' perpetrated as anonymous "critics" to denigrate Plaintiff's online advertisements for the sole purpose of harming Plaintiff's reputation and causing him to lose revenue, as the statements in the Doe Negative Ad Campaign bear directly on Plaintiff's services, professional capabilities, and business practices—all key aspects of Plaintiff's business and factors that any potential client of Plaintiff would consider before choosing a consultant to engage with or speaker to invite.

89.    The above statements and conduct by Defendants are egregious because they represent a pattern of making false statements about Plaintiff over a period of multiple years.

90.    Defendants' conduct is willful and malicious.

91.    Furthermore various third parties have been selling slavish, counterfeit copies of Plaintiff's Work on Amazon, and potentially elsewhere.

92.     On or about late June 2018, Mr. Klement received numerous complaints via email and noticed a negative review on the Amazon.com item page for the Work by a customer whose profile included an earlier review for *another* book that is a counterfeit copy of Mr. Klement's Work, entitled "When Coffee & Kale Compete (uye Book 1)" (Kindle Edition), accessible at:   https://www.amazon.com/When-Coffee-Kale-Compete-Book-ebook/dp/B078BKYQ8Q/   (the "Infringing Work").     Further, the Infringing Work claims to be authored by "Alan Klewer," which also is slavish misspelling of Mr. Klement's name "Alan Klement."

93.     The Amazon customer profile who reviewed the Infringing Work (and which was the Infringing Work's only review) used the pseudonym "D Halvorson."

94.     Upon information and belief, Doe 8 is not only the Amazon customer who reviewed the Infringing Work, but also uploaded the counterfeit work to Amazon.com. For instance, Doe 8's Amazon review claims that "If you really must read this the author has a webpage where you can download it for free."  Further, Doe 8's profile includes a review of Plaintiff's Work were he promotes Defendants, to wit: "If you are looking for information on Jobs to be Done there are three people that matter . . . Tony Ulwick." Doe 8's Amazon review admits that he or she is the same person who had written the disparaging negative ads on Twitter and Medium referenced above.

95.     To confirm whether the content of the Infringing Work with the slavishly copied title was counterfeit, Mr. Klement purchased a copy of the Infringing Work on Amazon.  The counterfeit copies suffer from glaring deficiencies from the legitimate copies of the Work, including typos, missing pages and poor print quality. More than 97% of the Infringing Work is the same as the legitimate Work.

96.     Upon information and belief, Doe 8 obtained a copy of Plaintiff's Work on the Internet, and uploaded a purposely poor quality copy (without permission or authorization) to Amazon.com, for the sole purpose of creating the false impression that

Doe 8 is an unbiased critic of Plaintiff, while falsely accusing Plaintiff of incompetence and promoting his employer and/or accomplice "Tony Ulwick."

97.     Defendants' unlawful conduct is causing and will continue to cause harm to Plaintiff and his services.

98.     Plaintiff has no adequate remedy at law for some of the relief requested herein below.

**FIRST CLAIM FOR RELIEF**
**VIOLATION OF THE LANHAM ACT**
**UNDER 15 U.S.C. § 1125(a)(1)(B)**

99.     Plaintiff repeats and incorporates herein by reference each and every one of the allegations contained in paragraphs 1 through 98, with the same force and effect as if set forth in detail herein again.

100.     Defendants' publication of false and misleading statements about Plaintiff and Plaintiff's services constitutes false advertising in violation of 15 U.S.C. § 1125(a)(1)(B).

101.     Defendants' publication of false and misleading statements about Plaintiff and Plaintiff's services is likely to deceive consumers as to the nature and quality of Plaintiff and Plaintiff's services.

102.     As a direct and proximate result of Defendants' unlawful acts, Plaintiff has suffered and will continue to suffer significant monetary and reputational injury in amounts to be determined at trial.

**SECOND CLAIM FOR RELIEF**
**DEFAMATION PER SE, TRADE LIBEL AND COMMERICAL**
**DISPARAGEMENT**

103.     Plaintiff repeats and incorporates herein by reference each and every one of the allegations contained in paragraphs 1 through 98, with the same force and effect as if set forth in detail herein again.

104.   Defendants have intentionally made knowingly false statements of fact about Plaintiff and Plaintiff's services on the Negative Ads.

105.   These statements were made maliciously and willfully, and were intended to cause harm to Plaintiff's business and reputation.

106.   The aforementioned statements were false when made and Defendants knew or should have known that the statements were false when made.

107.   These statements were made maliciously and willfully, and were intended to cause harm to Plaintiff's reputation.  The statements were made with reckless disregard for their truth or falsity or with knowledge of their falsity and with wanton and willful disregard of the reputation and rights of Plaintiff.

108.   The aforementioned statements where made of and concerning Plaintiff, and were so understood by those who read Defendants' publication of them.

109.   These statements constitute injurious falsehoods and trade libel, which impugn the integrity of Plaintiff and the quality of Plaintiff's services. These statements were expressly directed at Plaintiff.

110.   These statements were false, and were published to third parties in this district and across the Internet.

111.   Defendants have no privilege to assert their false and disparaging statements.

112.   As a result of Defendants' acts, Plaintiff has suffered irreparable damage to its reputation and further special damages in the form of lost sales and profits, in an amount to be determined at trial.

113.   As a result of the willful and malicious nature of the defamation, Plaintiffs are entitled to punitive damages.

## THIRD CLAIM FOR RELIEF
## UNFAIR COMPETITION

114.   Plaintiff repeats and incorporates herein by reference each and every one of the allegations contained in paragraphs 1 through 98, with the same force and effect as if set forth in detail herein again.

115.   Defendants authored and are using the Negative to divert users searching for Plaintiff to Defendants' competing business, "Strategyn."

116.   Defendants posted false and defamatory statement about Plaintiff online.

117.   As set forth above, Defendants posted—on a widely-disseminated, public forum—misleading and defamatory statements and misrepresentations about Plaintiffs concerning the nature, characteristics and/or quality of Plaintiffs' services.

118.   The false and misleading representations set forth above were made in the scope of commerce by a competitor who hijacked Plaintiffs' own promotion of his services.

119.   Ironically, Defendants' statements falsely accused Plaintiff of spawning in-fighting and "troll" activities, when Defendants' own employees managed and/or directed the behavior on these very same abusive Twitter accounts.

120.   Further, Defendants also created counterfeit copies of Plaintiff's Work, for the sole purpose of denigrating Plaintiff and to permeate more negative advertising regarding Plaintiff.

121.   Moreover, Defendants' action did harm Plaintiff and made Plaintiff believe that he would be damaged by Defendants' misrepresentations.

122.   Considering Defendants knew that their statements concerning Plaintiff were false and/or at best, misleading, and that their activities of impersonation and deception would confuse consumers in to believing that Defendants' anonymous attacks were unbiased, Defendants had no justification to assert the misrepresentations other than to harm Plaintiff's business by exploiting the earned reputation of Plaintiff and coopting Plaintiff's social media profiles for Defendants' own negative advertising.

123.    These acts and others stated above constitute a pattern of common law unfair competition, entitling Plaintiff to recovery of compensatory and punitive damages, in an amount to be proved at trial, including compensation for Plaintiff's time, effort and attorney's fees.

## FOURTH CLAIM FOR RELIEF
## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS AND PROSPECTIVE CONTRACTUAL RELATIONS

124.    Plaintiff repeats and incorporates herein by reference each and every one of the allegations contained in paragraphs 1 through 98, with the same force and effect as if set forth in detail herein again.

125.    Plaintiff had existing contracts with its customers and reasonably expected that its contractual relationships with its customers would continue into the future.

126.    Defendants knew of Plaintiff's contracts, as they were reported online.

127.    By the wrongful conduct described above, Defendants internationally and improperly interfered with Plaintiff's contracts with its customers and did so with the intent and purpose of damaging Plaintiff's business.

128.    Defendants' interference caused Plaintiff's customers confusion and to cease doing business with Plaintiff.

129.    As a result of Defendants' actions, Plaintiff has been and continues to be damaged in an amount to be determined at trial.

130.    Plaintiff has also suffered and will continue to suffer irreparable harm in the form of damage to its reputation as a result of Defendants' conduct described herein.

131.    While an award of damages may be adequate to compensate Plaintiff for the loss of particular contracts or customers, an award of damages will not be adequate to compensate Plaintiff for the damage to its reputation caused by Defendants.  Plaintiff has suffered and will continue to suffer irreparable harm unless injunctive relief is granted.

## FIFTH CLAIM FOR RELIEF
## PRIMA FACIE TORT

132.   Plaintiff repeats and incorporates herein by reference each and every one of the allegations contained in paragraphs 1 through 98, with the same force and effect as if set forth in detail herein again.

133.   Defendants published the above statements concerning Plaintiff and created the impersonating social media profiles, with the specific intent and desire to injure Plaintiff by fraud and deceit.  Defendants' course of conduct in doing so was motivated by spite and malevolence, and has no legal justification.

134.   By reason of the foregoing, Defendants have caused irreparable harm to Plaintiff's personal and professional reputations, putting the future of the business in jeopardy—as well as his ability to defend his reputation.

135.   As a result of Defendants' past and continued wrongful cats, Plaintiff has suffered damages in the form of, *inter alia*, lost clients, lost speaking engagements, and lost resulting revenue from both.

136.   In addition, Plaintiff has suffered and will continue to suffer irreparable harm unless injunctive relief is granted.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

1.   Enter a judgment declaring that Defendants' conduct violates 15 U.S.C. § 1125(a);

2.   Enter a judgment declaring that Defendants' conduct constitutes defamation, trade libel and/or commercial disparagement under the laws of the State of New York;

3.   Enter a judgment declaring that Defendants' conduct constitutes unfair competition;

4.       Enter a judgment declaring that Defendants' conduct constitutes tortious interference;

5.       Award Plaintiff compensatory damages according to proof at trial but in an amount not less than $1,000,000.00;

6.       Award Plaintiff punitive damages pursuant to the Lanham Act and the common law, due to Defendants' willful and wanton behavior;

7.       Enter a temporary and permanent order, enjoining Defendants from publishing the false advertising statements identified above in relation to Plaintiff and directing Defendant and its respective agents, servants, employees, successors and assigns, and all other persons acting in concert with or in conspiracy with or affiliated with Defendant, to remove, delete, or otherwise disable such posts;

8.       Enter a temporary and permanent order, enjoining Defendants from publishing the statements constituting trade libel and/or commercial disparagement identified above in relation to Plaintiff and directing Defendant and its respective agents, servants, employees, successors and assigns, and all other persons acting in concert with or in conspiracy with or affiliated with Defendant, to remove, delete, or otherwise disable such posts;

9.       Award Plaintiff reasonable attorney's fees, costs and disbursements in this civil action; and

10.      Enter such other and further relief to which Plaintiff may be entitled as a matter of law or equity, or which the Court determines to be just and proper.

Dated: Brooklyn, New York
        September 13, 2018

                            LEWIS & LIN, LLC


                            By: _/s/ Justin Mercer_____
                            David D. Lin, Esq. (DL-3666)
                            Justin Mercer, Esq. (JM-1954)
                            45 Main Street, Suite 608
                            Brooklyn, NY 11201
                            Tel: (718) 243-9323
                            Fax: (718) 243-9326
                            Email: david@iLawco.com
                                    justin@iLawco.com

                            *Counsel for Plaintiff Alan Klement*